IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-98-0044 |
| | § | |
| DAVE ANTONIO GRANT | § | (Civil Action No. H-06-2648) |
| | § | |

## MEMORANDUM AND ORDER

The defendant, Dave Antonio Grant, has filed a motion to vacate, set aside, or correct

his sentence under 28 U.S.C. § 2255.  The Court has carefully reviewed all pertinent matters

in this criminal case.  Based on this review, the Court's clear recollection of the relevant

proceedings, and the application of governing legal authorities, the Court **denies** the motion

and **dismisses** the corresponding civil action (H-06-2648) for the reasons set forth below.

## I.    BACKGROUND

On February 9, 1998, a grand jury in this district returned a one-count indictment

against Grant, accusing him of possession with intent to distribute 100 kilograms or more of

a Schedule I controlled substance, namely, marijuana, in violation of 21 U.S.C. § 841(a)(1)

and (b)(1)(B).  On April 14, 1998, Grant pled guilty pursuant to a written plea agreement

with the government.  In support of the plea, the government offered the following factual

summary of what the evidence would have shown if there had been a trial:

> On January 11, 1998, agents received information from a credible and
> reliable confidential informant (CI) that the defendant was arranging for the
> transportation of marijuana and that the defendant would be meeting
> individuals to arrange the transportation.  Agents set up surveillance to observe

the defendant.  Surveillance agents saw the defendant arrive a service station. The defendant got into a black Mustang and drove the car back to his house located at 12418 Green Trails Dr., Stafford, Texas.  The defendant backed the car into his garage.  After about 10 minutes, the defendant drove the Mustang from his house heading back to the service station.  Before the defendant reached the service station, officers stopped the defendant.  When the officers approached the car, they could see several large duffle bags in the back of the car.  The defendant consented to a search of the car and officers found 7 duffle bags.  One bag contained men's clothing with an ID bracelet with the name "Dave" on it.   The other bags in the back seat and trunk contained approximately 225 pounds of marijuana.  The defendant admitted the bags were his and that he had borrowed the car.  The defendant also consented a search of his house and officers found an additional 8 pounds of marijuana in the garage.  Approximately $20,890 was also recovered from inside the house. The defendant admitted that the money was his payment and payment for others involved in the transportation.  Officers also recovered one assault-type rifle, one shotgun, and two semi-automatic pistols from the master bedroom and closet.

    The defendant also consented to a search of a second residence located at 11339 Bayou Place, Houston, Texas.  During this search officers found a suitcase that contained packaging material and marijuana residue.

(Crim. Doc. # 8, *Factual Basis*; Crim. Doc. # 23, *Rearraignment Tr.*, at 12-14).  Grant did not dispute the summary presented by the government and conceded that the facts alleged were true. (Crim. Doc. # 23, *Rearraignment Tr.* at 14, 21). The Court accepted Grant's plea and found that it was freely, knowingly, and voluntarily made. (*See id*. at 22).

    The Court directed the Probation Office to prepare a presentence report ("PSR") for purpose of determining the sentence and allowed Grant to remain free on bond pending the sentencing hearing.  The PSR prepared by the Probation Office reported that the bags of marijuana taken from Grant's car were found to weigh 235 pounds and that the amount recovered from his residence weighed 10 pounds, making him accountable for 245 pounds

2

or 111.3 kilograms.  Based on this amount, the PSR determined that Grant's base offense level score was 26.  With a 2-level enhancement for the possession of a dangerous weapon in connection with the offense, Grant's adjusted offense level score was raised to 28.  With a 3-level reduction for acceptance of responsibility, Grant's total offense level score was lowered to 25.  Because he had zero criminal history points, Grant faced a potential sentence of 57 to 71 months in prison.  Grant failed to appear at his sentencing, however.  After the Court determined that Grant had absconded from pretrial supervision, a bench warrant issued for his arrest.  Grant remained a fugitive until July of 2004, when he was extradited from Jamaica.  Upon his return to custody, the Court re-set Grant's case for sentencing.

An amended PSR prepared by the Probation Office included details of additional drug deals conducted by Grant while out on bond after entering his guilty plea, but before he became a fugitive.  These additional deals involved sizeable quantities of marijuana.  Based on the total amount of marijuana involved in these transactions, the Probation Office determined that Grant was accountable for 1,687 kilograms of marijuana, meriting a base offense level score was 32 under the applicable United States Sentencing Guidelines, which were applied in an advisory manner under *United States v. Booker*, 543 U.S. 220 (2005).  The Probation Office adjusted the base offense level by 2 because Grant was in possession of a dangerous weapon during the commission of the offense.  The Probation Office added 3 additional levels for Grant's role as a manager or supervisor of criminal activity involving five or more participants or that was otherwise extensive.  The Probation Office also added 2 more levels for obstruction of justice, because Grant had absconded from pretrial

3

supervision and failed to appear at his sentencing.  Because of the obstruction of justice, the Amended PSR offered no reduction for acceptance of responsibility.  Thus, with all of the adjustments, Grant's total offense level score was raised from 32 to 39.  With a criminal history score of zero, Grant faced a potential range of punishment from 262 to 327 months in prison.

Grant raised numerous objections to the Amended PSR, regarding the drug quantity used to determine his potential sentence, which included drug dealing activities other than those alleged in the indictment.  (Crim. Doc. # 45, # 46).  The sentencing hearing was held on February 7, 2005.  After considering all of the objections, the Court agreed that Grant was not accountable in this case for the entire amount of drugs determined in the Amended PSR. The government stipulated that the amount of drugs seized from Grant's car on January 11, 1998, was found to weigh just under 100 kilograms (97.3 kilograms). (Crim. Doc. # 72, *Sentencing Tr.* at 29).  It was undisputed, however, that the amount negotiated for the delivery was in excess of 100 kilograms.  (*See id*. at 29).  After noting further that an additional quantity of marijuana was recovered from Grant's residence, the Court held Grant accountable for the "negotiated amount" of at least 100 kilograms.  (*See id*.).  Thus, the Court reduced the base offense level score to 26 levels based only on the amount of drugs involved in the delivery planned for January 11, 1998, and excluded the quantities involved in Grant's other drug dealing activities.  (*See id*. at 29-30).

The Court declined to enhance the sentence by 3 levels based on Grant's alleged role as a manager or supervisor.  (*See id*. at 30).  Adding 2 levels for obstruction of justice and

4

2 additional levels for possessing a dangerous weapon during the commission of the offense, the Court determined that Grant's total offense level score was 30.  At this level, Grant faced a range of imprisonment from 97 to 121 months in prison. (*See id*.).  The Court considered sentencing Grant above the Guideline range on account of the fact that he continued dealing drugs and then absconded after the Court had granted him a bond.  (*See id.* at 34-35). Ultimately, however, the Court sentenced Grant near the top of the Guidelines range to 120 months in prison, followed by a 5-year term of supervised release.  (*See id*. at 47).

On direct appeal, Grant challenged his sentence on the grounds that it was based on a drug quantity that was greater than the 97.3 kilogram amount actually seized, as referenced in the documents seeking his extradition from Jamaica.  Grant also objected that his sentence was based on improper judicial fact findings.  The Fifth Circuit found that Grant had waived an appeal in his written plea agreement.  *See United States v. Grant*, No. 05-20157 (5th Cir. March 28, 2006).  After further finding that Grant's sentence was not in excess of the statutory maximum and did not constitute an upward departure from the Guidelines, the Fifth Circuit dismissed the appeal pursuant to the valid waiver.  *See id*.  Grant did not appeal further by filing a petition for a writ of certiorari with the United States Supreme Court.

On August 11, 2006, Grant filed the pending motion for relief from his conviction and sentence under 28 U.S.C. § 2255.  (Crim. Doc. # 77).  Grant includes a supporting memorandum with his motion.  The motion does not challenge Grant's guilty plea.  Instead, Grant contends that he is entitled to relief from his sentence for the following reasons: (1) the sentence imposed exceeds the applicable Guidelines range; (2) the sentence was

enhanced improperly with judicial fact findings regarding his possession of a dangerous weapon during the commission of the offense and for obstruction of justice; and (3) he was denied effective assistance of counsel at sentencing.  After reviewing the entire record, the Court concludes that the defendant is not entitled to relief under § 2255 for reasons discussed briefly below.

## II.    STANDARD OF REVIEW FOR SECTION 2255 MOTIONS

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a petitioner "must clear a significantly higher hurdle" than the standard that would exist on direct appeal.  *United States v. Frady*, 456 U.S. 152, 166 (1982).  When a defendant has been convicted and his conviction has been upheld on direct appeal, there is a presumption that the defendant's conviction is fair and final.  *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). "As a result, review of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice."  *Id.*  Of course, this procedural bar does not apply to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel.  *See Massaro v. United States*, 538 U.S. 500 (2003) (holding that ineffective assistance claims are properly raised on collateral review and not procedurally barred by a failure to raise them on direct appeal).

The defendant proceeds *pro se* in this matter.  A prisoner's *pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys and are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them.

*See Haines v. Kerner*, 404 U.S. 519 (1972).   At the same time, however, prisoners proceeding *pro se* are still required to provide sufficient facts in support of their claims. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).   Even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue."  *Id.* (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").

## III.   DISCUSSION

### A.     Errors at Sentencing

In two related claims, Grant contends that this Court erred in determining his sentence.  Grant argues that he is entitled to relief because the Court exceeded the applicable Guidelines range.  In particular, Grant maintains that the Court should have used the amount actually seized (97.3 kilograms), and not the "negotiated amount" of 100 kilograms, as the drug quantity used to determine his base offense level score under the Guidelines.  Grant complains further that the Court enhanced his sentence improperly by adding 2 levels for possession of a dangerous weapon during the commission of the offense and for obstructing justice by absconding.

To the extent that Grant argues that this Court miscalculated the Guidelines range, challenges to the district court's technical application of the Sentencing Guidelines are not cognizable in a § 2255 motion.  *See United States v. Williamson*, 183 F.3d 458, 462 (5th Cir.

7

1999); *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998); *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).  Moreover, the Fifth Circuit reviewed Grant's sentence and found that it did not exceed the applicable Guidelines range or the statutory maximum.  *See United States v. Grant*, No. 05-20157 (5th Cir. March 28, 2006).  Because the propriety of Grant's sentence was considered on direct appeal, his challenge is not cognizable on collateral review.  *See United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994); *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986).  Moreover, a review of Grant's objections reveals that his claims lack merit.

### 1.    The Sentence did not Exceed the Guidelines Range

Grant complains that the Court incorrectly determined that his base offense level score was 26, pursuant to § 2D1.1 of the Sentencing Guidelines, after finding that there were at least 100 kilograms of drugs involved in the planned delivery.  Grant notes that quantities of at least 100 kilograms warrant a level 26, but that quantities of less than 100 kilograms, but more than 80, have a base offense level score of 24.  Grant points out that the drugs actually seized in connection with the transaction were found to weigh only 97.3 kilograms. He insists, therefore, that the Court erred by holding him accountable for 100 kilograms and by fixing his base offense level at 26, rather than 24.

As detailed at the guilty plea proceeding, a confidential informant reported that Grant was transporting 225 pounds of marijuana. (Crim. Doc. # 23, *Rearraignment Tr.* at 13-14). Law enforcement officers seized bags containing approximately 225 pounds of marijuana from Grant's car.  (*See id.*).  Grant agreed that the government's factual summary of the

8

offense was true.  (*See id*. at 14, 21).  At the sentencing, the Court considered the actual weight of the drugs seized (97.3 kilograms) and the amount "that was supposedly going to be delivered" during the transaction.  (Crim. Doc. # 72, *Sentencing Tr*. at 28-29).  The Court also noted that an additional quantity of drugs was recovered from Grant's residence.  (*See id*. at 29).  Grant conceded that there was "no question" that the intended transaction involved at least 100 kilograms.  (*See id*. at 29).  Therefore, the Court calculated Grant's base offense level score at sentencing based on the "negotiated amount" of the transaction, which involved at least 100 kilograms.  (Crim. Doc. # 72, *Sentencing Tr.* at 29-30).

According to the applicable Sentencing Guidelines, where the offense involves an agreement to sell a controlled substance and the sale has not been completed, as in this case, "the agreed-upon quantity of the controlled substance shall be used to determine the offense level[.]" U.S. SENTENCING GUIDELINES MANUAL § 2D1.1 cmt. n.12.  In other words, "when an offense involves negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution shall be used to calculate the applicable amount" for purposes of determining the base offense level score. *United States v. Vine*, 62 F.3d 107, 109-110 (5th Cir. 1995) (citing U.S.S.G. § 2D1.1, cmt. n.12).  Grant, who had an opportunity to address the Court in person at the guilty plea and sentencing proceedings, did not dispute that the negotiated amount of the transaction involved 100 kilograms.  It follows that Grant fails to show that the sentence imposed exceeded the applicable Guidelines range. Accordingly, this claim is without merit.

### 2.    Improper Enhancements

Grant complains that the Court enhanced his sentence in violation of *Blakely v. Washington*, 542 U.S. 296 (2004), based on improper fact findings that were not made by a jury beyond a reasonable doubt.  In particular, Grant objects to the 2-level enhancements that he received for possession of a dangerous weapon during the commission of the offense and for obstructing justice by absconding prior to sentencing.  Grant presumably points to the rule in *Blakely*, as modified by *United States v. Booker*, 543 U.S. at 233, which states that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."

Grant's argument is based on the implicit assertion that he was sentenced under a mandatory Sentencing Guidelines scheme.  He was not.  The sentencing occurred after *Booker* was decided and the record shows that the Court did not treat the Guidelines as mandatory.  (Crim. Doc. *Sentencing Tr.* at 6-7) (discussing the *Booker* decision and the Court's intent to refer to the Guidelines as an advisory framework, and not as a mandatory scheme).  Because the Court expressly determined the sentence by using the Guidelines in their advisory capacity only, Grant's claim has no merit.

Moreover, Grant does not show that the enhancements were unwarranted or that the sentence was unreasonable.  In this instance, Grant conceded at his guilty plea that he was in possession of several dangerous weapons, which were found in his residence along with drug proceeds and tools of the trade.  (Crim. Doc. # 23, *Rearraignment Tr.* at 14).  This is

10

sufficient to support the 2-level enhancement  for possession of dangerous weapons during the commission of the offense.  Likewise, it is undisputed that Grant absconded prior to his original sentencing and became a fugitive.  Grant fails to show that the Court improperly granted the 2-level enhancement for obstruction of justice on that basis.  Because Grant has not shown that his sentence was enhanced improperly, he is not entitled to relief under 28 U.S.C. § 2255 on this issue.

### B.    Ineffective Assistance of Counsel

Grant also complains that he was denied effective assistance of counsel at his sentencing. The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  Claims for ineffective assistance of counsel are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally-deficient performance by counsel and actual prejudice as a result of the alleged deficiency.  *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000).  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable." *Strickland*, 466 U.S. at 687.

Counsel's performance is constitutionally deficient if it falls below an objective standard of reasonableness.  *See United States v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005) (citing *Strickland*, 466 U.S. at 687-88).  Scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the

distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Molina-Uribe*, 429 F.3d at 518 (quoting *Strickland*, 466 U.S. at 689). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. To prove prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Harris*, 408 F.3d 186, 189 (5th Cir. 2005) (quoting *Strickland*, 466 U.S. at 694).

In this instance, Grant was represented by local criminal defense attorney Stanley Schneider at his guilty plea and sentencing proceeding.  Grant claims that Schneider was deficient for failing to object to the amount of drugs used to determine his sentence and that Schneider failed to provide him with a copy of the PSR and other documents before sentencing.  These claims are addressed briefly below.

### 1.    Failure to Object to Drug Quantity

Grant contends that Schneider was deficient because he was not aware of "relevant facts and laws relating to [Grant's] case," which resulted in a sentence in excess of the applicable Guidelines range. In particular, Grant complains that Schneider failed to argue that the drug quantity involved was only 97.3 kilograms or to insist on a base offense level score of 24.  The record refutes this claim.  The record shows that Schneider filed numerous written objections regarding the drug quantity used to determine the sentence.  (Crim. Doc.

#45, #46).  Schneider specifically argued that the Court should limit the quantity of drugs involved to 97.3 kilograms for a base offense level score of 24.  (Crim. Doc. #45).  Schneider raised the same argument at the sentencing where he maintained that the punishment should be based on the actual amount of drugs recovered (*i.e.,* 97.3 kilograms).  (Crim. Doc. #72, *Sentencing Tr.* at 28).

The issue of drug quantity was addressed at length during the sentencing proceeding. As noted above, the Amended PSR recommended that Grant be held accountable for as much as 1,687 kilograms of marijuana, including the extensive drug-dealing activities engaged in by Grant while he was out on bond after his guilty plea in this case.  Because of the skillful objections raised by Schneider, the Court decided not to hold Grant accountable for the large quantity of drugs detailed in the Amended PSR, but instead limited his liability to only 100 kilograms.  Grant does not show that his counsel failed to raise an objection to the drug quantity or to otherwise argue that the quantity of drugs should be limited to 97.3 kilograms. To the contrary, the record confirms that Schneider diligently raised the 97.3 kilogram quantity as an issue and sought to limit his client's accountability as much as possible.  Thus, Grant does not demonstrate that his counsel's performance was deficient.

Moreover, as noted previously, Grant has not shown that the sentence was imposed in excess of the applicable Guidelines range.  Thus, Grant likewise fails to demonstrate that he suffered actual prejudice.  Absent a showing of deficient performance and actual prejudice, Grant fails to establish a valid ineffective-assistance claim.  Therefore, he is not entitled to relief on this issue.

**2.      Failure to Provide Grant with Sentencing Materials**

Grant also complains that Schneider failed to provide him with a copy of certain materials prior to the sentencing hearing so that he could have an opportunity to correct any errors.  The record refutes this allegation.  At the start of the sentencing proceeding, the Court made specific reference to certain sentencing materials, including the original PSR, the defendant's original objections, the Amended PSR, the defendant's objections to the amended PSR, and three addendums to the Amended PSR that were prepared by the Probation Office.  (Crim. Doc. #72, *Sentencing Tr.* at 2).  Schneider confirmed that he reviewed these sentencing materials with Grant:

| | |
|---|---|
| COURT: | . . . Mr. Schneider, have you gone over the Presentence Investigation materials that I've described with your client? |
| SCHNEIDER: | Yes, your Honor. |
| COURT: | All right.  Has he seen the Probation Office's addendum? |
| SCHNEIDER: | We've gone over the third addendum. |
| COURT: | The third addendum is really the one I'm .... |
| SCHNEIDER: | Yes, your honor |
| COURT: | ... referring [to]. |
| SCHNEIDER: | We went over that today. |

(Crim. Doc. #72, *Sentencing Tr.* at 4).  The Court also asked Grant whether he had reviewed the sentencing materials with his attorney, and he replied that he had:

| | |
|---|---|
| COURT: | All right.  Let me ask Mr. Grant.  Have you gone over the sentencing materials with your lawyer? |

14

GRANT:            Yes, ma'am.

(*Id.* at 6). When asked, Grant further replied that he did not have any additional objections to raise apart from the ones presented by Schneider:

COURT:           Okay.  Good.  Do you have any objections that you want to raise that your lawyer has not thought of, or not raised in the [written objections]?

GRANT:            No, ma'am.

(*Id.* at 6). This record confirms that Schneider reviewed all of the pertinent materials with his client and that Grant had no additional objections to make.

Grant's sworn statements in open court are entitled to a strong presumption of truthfulness.  *United States v. Lampaziane*, 251 F .3d 519, 524 (5th Cir. 2001) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).  Grant offers nothing more than his own conclusory assertion that his counsel did not provide him with a copy of pertinent sentencing materials before the hearing or that his counsel failed to raise an error or inaccuracy.  Even assuming that Grant was not provided with all of the sentencing materials, he does not show how he was prejudiced.  In that regard, Grant does not articulate any errors that were not raised by his counsel in the written objections or at the sentencing hearing.  Accordingly, Grant fails to demonstrate deficient performance or actual prejudice.  Therefore, Grant fails to establish a valid ineffective-assistance claim or to show that he is entitled to relief under 28 U.S.C. § 2255.

## IV.    CERTIFICATE OF APPEALABILITY

The defendant's § 2255 motion is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, codified as amended at 28 U.S.C. § 2253.  Thus, a certificate of appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would

find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529

U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring

further briefing or argument.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

After carefully considering the entire record of the criminal proceeding, the Court concludes

that jurists of reason would not debate whether the movant has stated a valid claim or

whether any procedural ruling in this case was correct.   Accordingly, a certificate of

appealability will not issue.

## V.   CONCLUSION AND ORDER

Because Grant has failed to establish an error of constitutional or jurisdictional

magnitude, he is not entitled to relief under 28 U.S.C. § 2255.  Based on the foregoing, the

Court **ORDERS** as follows:

1.   The defendant's pending § 2255 motion (Crim. Doc. # 77) is **DENIED** and the

corresponding civil action (H-06-2648) is **DISMISSED** with prejudice.

2.   The defendant's motion for leave to proceed *in forma pauperis* (Crim. Doc.

#78) is **DENIED** as moot.

3.   A certificate of appealability from this decision is **DENIED**.

The Clerk will provide a copy of this order to the parties and will file a copy of this

order with the docket in Civil Action No. H-06-2648.

SIGNED at Houston, Texas, on **August 29, 2006.**

_____

Nancy F. Atlas
United States District Judge